## UNTED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

|  |  |  |
|---|---|---|
| (1) **ESTATE OF ANTHONY KADE DAVIS** and **NICHOLE YOUNG**, individually and as a surviving heir and personal representative of the estate of Anthony Kade Davis (deceased) | ) ) ) ) ) ) ) | |
| **Plaintiff,** | ) ) | **Case No.**   CIV-17-807-R |
| vs. | ) ) | **JURY TRIAL DEMANDED** |
| (1) **BOARD OF COUNTY COMM. OF THE COUNTY OF CANADIAN COUNTY,** a Political Subdivision of the State of Oklahoma; | ) ) ) ) ) | **ATTORNEY'S LIEN CLAIM** |
| (2) **RANDALL EDWARDS,** Sheriff of Canadian County, individually and in his official capacities; | ) ) ) ) | |
| (3) **TURN KEY HEALTH CLINICS, LLC,** an Oklahoma limited liability corporation; | ) ) ) ) | |
| (4) **DOES, I though III,** unknown individuals who were involved but not yet identified, | ) ) ) ) | |
| **Defendants.** | ) ) ) | |

## COMPLAINT

Comes Now the Plaintiff, NICHOLE YOUNG, as a surviving sibling, heir, and personal representative of the estate of Anthony Kade Davis (deceased) and alleges and states as follows:

## INTRODUCTORY STATEMENT

1. On or about June 5, 2016, Anthony Davis (hereinafter "Mr. Davis") was found unresponsive in his jail cell at the Canadian County Detention Center (hereinafter "Detention Center"). Shortly thereafter Mr. Davis was pronounced dead at the age forty-

six (46).  He is survived by his mother Marlene Cannon, his sister, Nichole Young, and his adult daughter, Alexis Davis.

2.  Mr. Davis prior to being found naked and unresponsive was being detained at the Detention Center for failure to appear on a misdemeanor DUI court appearance.  It appears to be unknown to staff at the time as to how long Mr. Davis had been naked and unresponsive, and as to what the cause of the hematoma to the face/head, the bruising to the body, the cause of why he was covered in feces, and his ultimate death.

3.  Although it is apparent that the Detention Center had prior notice of mental and physical health complications within the preceding 60 days, no effort was taken to provide proper safety or medical care to Mr. Davis.

**JURSIDICTION AND VENUE**

4.  The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1343 to secure protection of and to redress deprivation of rights secured by the Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution as enforced by 42 U.S.C. § 1983, which provides for the protection of all persons in their civil rights and the redress of deprivation of rights under color of law, as well as the laws of the State of Oklahoma.

5.  The jurisdiction of this Court is also invoked under 28 U.S.C. § 1331 to resolve a controversy arising under the Constitution and laws of the United States, particularly the Fourth, Fifth, Eighth and Fourteenth Amendments to the Unites States Constitution and 42 U.S.C. §1983.

6.  This Court has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. § 1367, since the claims form part of the same case of controversy arising

under the United States constitution and federal law. The Plaintiff asserts causes of action arising under Oklahoma law, namely claims for negligence wrongful death.

7. The matter in controversy exceeds $75,000, exclusive of costs and interest.

8. Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## PARTIES

9. Plaintiff, Nichole Young ("Plaintiff"), is a resident of Canadian County Oklahoma, and an heir and personal representative of the estate of Mr. Davis. The survival causes of action in this matter are based on violations of Mr. Davis' rights under the Fourth, Fifth, Eighth and/or Fourteenth Amendments and Oklahoma State Law. Plaintiff seeks damages on behalf of the estate and for, *inter alia,* her individual pecuniary loss (including lost wages), grief, pain and suffering in connection with the wrongful death of her brother Mr. Davis. Plaintiff also seeks punitive damages and all damages associated with the Estate of Davis.

10. The Defendant Board of County Commissioners of the County of Canadian County ("BOCC" herein after) is a political subdivision of the State of Oklahoma responsible for the Detention Center and is properly named pursuant to 19 O.S. § 4.

11. Defendant, Randall Edwards ("Sheriff Edwards" or "Defendant Edwards") is, and was at all times relevant hereto, the duly elected Sheriff of Canadian County, Oklahoma, a political subdivision of the State of Oklahoma resided in Canadian County, Oklahoma and at all times relevant herein was responsible for the operation of the Detention Center. Defendant Edwards, as Sheriff and the head of the Canadian County Sheriff's Department was, at all times relevant hereto, responsible for ensuring the safety and well-being of inmates detained and housed at the Canadian County Detention Center, including the

provision of providing appropriate medical care and treatment to inmates in need of such care, pursuant to 57 O.S. § 47. In addition, Defendant Edwards is, and was at all times pertinent hereto, responsible for caring, adopting, approving ratifying, and enforcing the rules, regulations, policies, practices, procedures, and/or customs of the Canadian County Sheriff's Department and the Canadian County Detention Center, including the polices, practices, procedures, and/or customs that violated Mr. Davis' rights as set forth in this Complaint. Defendant Edwards is sued in his individual and official capacities for acts performed while he was Sheriff of Canadian County.    At all times relevant herein, Edwards was acting under color of law and within the course and scope of his employment with Canadian County, State of Oklahoma.

12. That Defendant Sheriff Edwards, as Sheriff is the final decision maker for the Canadian County Sheriff's department. There is no other person who has authority over the Sheriff, acting in his capacity as Sheriff. Both as to his own conduct and conduct of his employees, because of his position as Sheriff, the acts, customs, policies, practices, failure to train and failure to supervise his employee as alleged herein are attributed to the County as well as the Sheriff in his official capacity, to include but not limited to providing protection to inmates from harm from others, from self and reasonable medical care to inmates.

13. That pursuant to the Governmental Tort Claims Acts (OGTA), the Plaintiff submitted Notice of Tort Claim which was received by the County on November 2, 2016. 90 days passed on January 31, 2017 and the claim was deemed denied. This case is being filed within the time requirements of the OGTA and to preserve and protect the Statute of Limitations on behalf of Plaintiffs.

14. Defendant, Turn Key Health Clinic, LLC ("TKH"), was at all times relevant hereto, is corporation organized under the laws of the State of Oklahoma and provides and manages the day to day medical services and medication to jails.   Further that while Mr. Davis was in the custody of the Sheriff's Department, TKH was responsible, in part, for implementing Canadian County Detention Center polices regarding medical and mental health care, assisting and developing those polices and in training and supervising its employees.

## FACTUAL ALLEGATIONS BACKGROUND

15. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 14, as though fully set forth herein.

16. On or about June 5, 2016, "Mr. Davis" was found unresponsive in his jail cell at the Canadian County Detention Center.  Shortly thereafter Mr. Davis was pronounced dead at the age forty-six (46).

17. Prior to the incarceration of Mr. Davis', Defendants where aware of his physical and mental health, serious psychological problems and potential emergent medical needs requiring hospitalization or/or medical care in advance of his untimely being found unconscious and ultimate death.

18. Mr. Davis was originally arrested by the El Reno Police Department on or about April 4, 2016, for a misdemeanor offense of Driving a Motor Vehicle While Under the Influence of Alcohol. During that initial detention period on the misdemeanor DUI, Mr. Davis was found sitting on a bench in the release area awake and confused. The detention center's medical staff reported that Davis had a seizure on or about April 6, 2016, and had progressively gotten more confused. At that time there was evidence of bruising and swelling on the person of Mr. Davis as noted on April 7.   The source or cause of said

injuries to his person are unknown at this time.  Mr. Davis appeared for arraignment before the Court in Canadian County District Court. At that time a bond was set in the amount of $7,500.00.

19. On or about April 13, 2016, through an application for indigent counsel by Mr. Davis, was appointment indigent counsel to represent him (a public defender).

20. On April 13, 2016, a personal recognizance bond was granted and he was released from custody of the Canadian County Detention Center. (Mr. Davis was not required to post a security or cash bond.  He was released with a promise to re-appear from the hospital.)

21. On May 17, 2016, a bench warrant was issued by the District Court of Canadian County for Mr. Davis' Failure to Appear for the misdemeanor DUI court appearance that was set on May 10, 2016 and bond was set at $15,000.00 by the Court.

22. On May 31, 2016, Mr. Davis was arrested near his apartment pursuant to the bench warrant for Failure to Appear.  He was booked into the Canadian County Detention Center at 14:06 hours on the 31st. However, by early evening of June 5, 2016, Mr. Davis was pronounced dead upon arrival at Mercy Hospital in El Reno, Oklahoma.

23. It is upon information and belief that Mr. Davis was not properly accessed for medical needs and conditions upon entry into the Detention Center, nor was he properly medicated while there, nor were steps taken to keep him safe.

24. On the date of Mr. Davis' death, it is upon information and belief that he was found lying naked on the floor of a cell, unresponsive, with observable external injuries and covered in human feces.  Further, that at the time of arrival by emergency personnel, the Canadian County Sheriff's Office and/or TKH was attempting CPR. It was reported that Mr. Davis had been ill for three (3) days, and had denied any drug involvement or use in the

proceeding days. The staff reported that they found the patient on the floor, unresponsive and then called 911. Further, staff reported that they had done three (3) cycles of CPR prior to the ambulance arrival. It was observed that the patient was naked, covered in feces and that the Canadian County staff stated that the patient, Mr. Davis had been defecating in his cell the three (3) days previously. It was reported that the patient's feces was black, coffee ground in appearance and foul smelling and that his body temperature was 93 degrees.

25. Despite the known obvious and excessive risk that Mr. Davis was in physical and emotional distress while in the custody and care of the detention center, and had a history of potentially harming himself, and chronic mental and physical defects, rather than transporting him to a facility for mental and physical health treatment, the Defendants locked Mr. Davis in a holding cell in isolation.  It is upon information and belief that the Defendants did not take any protective action or take any other measure to ensure his safety and well-being be it physical or mental in nature, nor was medical care given.

26. During the time period of Mr. Davis' confinement in the Canadian County Detention Center, he continued to exhibit behaviors that clearly and unambiguously showed he was suffering from severe and acute mental and physical distress.

27. Upon inspection of the body of Mr. Davis post mortem, he presented physical injuries such as, subdural lacerations and red and purple contusions about his body and person. It is unclear at this time if Mr. Davis was physically injured by others or made harm to himself while in the custody and control of the Defendants either by seizure like injuries or even via self-harm based upon his physical and mental distresses.

28. On information belief, while in the Canadian County Detention Center, Mr. Davis was known to be screaming, saying that he was in pain, and was having emotional distress pleading for assistance and care that went unanswered.

29. It is upon information and belief and the opinion of the medical examiner, that Mr. Davis also had a seizure within the days preceding his death.

30. It is upon information and belief, Mr. Davis informed the booking staff that he was in emotional and physical distress and that he physically presented with behaviors consistent with a person in physical and emotion distress. In addition, on information and belief the Canadian County Detention Center and/or TKH was placed on notice that Mr. Davis was acutely mentally distressed and was suffering from mental and physical breakdown. Moreover, from his behaviors and actions exhibited as early as the booking time in the Canadian County Detention Center, it was obvious that Mr. Davis was suffering from serious mental and/or neurological illness, posed a substantial threat to himself and/or others of physically harming himself. In addition, the Canadian County Detention Center, TKH, and the employees thereof, had notice and information of the prior hospitalization for similar medical concerns and serious mental and physical health needs from April 2016.

31. Nevertheless, despite Mr. Davis' obvious, serious emergent medical and mental health needs, the Defendants and employees of the Defendants on duty in the detention center, did not transport Mr. Davis to a hospital or mental health facility nor did they take any action to properly care for him. In addition, the Canadian County Detention Center, TKH, and personnel on duty failed to provide a diagnostic evaluation, testing, or assessment or treatment related to the apparent physical trauma and mental distress that was apparent and/or known or should have been known based upon past dealing with Davis. Upon

finding him unresponsive, they assert they conducted CPR with no response observed therefrom.

32. While, although delayed, "medical emergency" and ambulance assistance was called, by the Canadian County Detention Center, TKH, or personnel thereof, Mr. Davis was not properly assessed, evaluated or treated as needed while in custody. Mr. Davis was not placed in location wherein he could be monitored by staff until he could receive appropriate mental health and/or physical evaluation or treatment and he was not monitored while in custody.

33. Little is currently known about what occurred between the time Mr. Davis was booked into the Canadian County Detention Center and his ultimate death. It is upon information and belief, that Mr. Davis had at least one seizure that was known to Defendants as noted by staff, that vital signs were not taken at any time or otherwise evaluated or medical care provided. That he was not provided needed medications or medically assessed.

34. The Defendants failed in their efforts to resuscitate Mr. Davis upon finding him unresponsive in the cell. He ultimately died at the age of forty six (46), while having been alone, naked, hungry, isolated and ignored in the days and hours proceeding his death.

35. From the moment Mr. Davis was detained at the Canadian County Detention Center, Mr. Davis posed an obvious, known and substantial risk of medical distress, mental distress, and potential self-harm. At all relevant times, Mr. Davis had obviously, serious, and emergent medical health needs that were known based upon his prior incarceration and hospitalization within the previous sixty (60) days. In addition, the Defendants knew of and disregarded the excessive risk to Mr. Davis' health and safety. The Defendants failed to provide Mr. Davis with adequate and timely medical and mental healthcare, protection

or supervision in deliberate indifference to his health and safety. Defendants' deliberate indifference to the excessive risk to Mr. Davis' health and safety was a direct and proximate cause of his death.

36. The Defendants collectively acted with deliberate indifference to Mr. Davis' serious medical needs such was in furtherance of and consistent with: (a) the policies which Sheriff Edwards promulgated, created, implicated or possessed responsibility for the continued operation of; (b) polices which TKH had responsibility for implementing and which TKH assisted in developing; and (c) established procedures, customs and/or practices of defendants collectively.

37. The Defendants Sheriff Edwards and TKH failed to promulgate and implement, and knowingly failed to enforce, adequate mental health polices responsive to serious medical needs of inmates like Mr. Davis. In particular, during all times pertinent, they lacked to have adequate guidelines in place as to the standard of care specific to inmates' mental and/or health needs. It is common knowledge that mental illness is prevalent in our jails and prisons. It is upon information and belief that on at least one previous occasion Sheriff Edwards and TKH were put on notice that their mental health and physical health policies were lacking. Despite this notice, Defendants' repeated the same mistakes with respect to Mr. Davis, in deliberate indifference to the known excessive risks to his health and safety. Sheriff Edwards failed to assure that the deficiencies were addressed and abated, such that additional violations would not occur in the future. The lack of guidelines for personnel to follow at the Canadian County Detention Center as to the standard of care for inmates' mental health, physical needs, and lack of enforcement of existing mental health policies or other guidelines, demonstrates a failure to train, failure to supervise and deliberate

indifference to known, obvious and excessive risks to the health and safety of inmates like Mr. Davis.

38. Second, Sheriff Edwards and TKH have maintained a policy, practice and/or custom of providing untimely assessment, identification, and treatment of inmates' medical and mental health needs, in disregard of known, obvious and excessive risks to the health and safety of inmates like Mr. Davis. At all times pertinent, it was the policy of TKH, as approved and agreed to by Sheriff Edwards that indicate program and procedure shortfalls. Sheriff Edwards and TKH having engendered a lax environment wherein timely assessment and treatment by qualified professionals are not emphasized. In many cases, inmates *never* receive a proper assessment or treatment they need. For instance, Mr. Davis never received an assessment, evaluation or treatment for the apparent body trauma, and existing health issues despite the obvious and emergent need for the same. There are instances when other inmates did not receive timely treatment, resulting in death and permanent loss of usage of their bodies. Nonetheless, despite this known pattern of tragic outcomes due to delayed or denied treatment, sheriff Edwards and TKH have failed to abate the deficiencies in deliberate indifference to the health and safety of inmates like Mr. Davis.

39. Third, TKH and Sheriff Edwards have maintained a policy, practice and/or custom of understaffing the medical needs of the facility, which poses known, obvious and excessive risks to the health and safety of inmates like Mr. Davis. The staff are inadequate in quality and are also unqualified to manage, monitor, and treat the conditions of inmates like Mr. Davis with complex and serious mental health and physical needs. Consistent with the understaffing policy, practicing and/or custom, there was no psychiatrist or physician at

the jail when Mr. Davis was known to be a risk, nor did they take steps to have him see one. There was no qualified provider on-site to assess or treat Mr. Davis' obvious, emergent and serious mental health and medical needs.

40. Fourth, Defendants Sheriff Edwards and TKH are responsible for a policy, practice and/or custom of inadequate medical triage screening that fails to identity and classify inmates with serious medical or mental health needs (and history). The inadequate medical triage screening system creates known, obvious and excessive risks that inmates like Mr. Davis with serious and emergent mental health or medical needs will not receive timely and necessary evaluation of treatment. They have been on notice of the deficient medical triage screening but have failed to sufficiently remedy such is in deliberate indifference to excessive risks to the health and safety of inmates like Mr. Davis.

41. Fifth, Sheriff Edwards and TKH have maintained a policy, practice and/or custom of severely limiting the use of off-site medical, mental health and diagnostic service providers even in emergent situations, in disregard to known, obvious and excessive risks to the health and safety of inmates like Mr. Davis. Sheriff Edwards and TKH have strongly discouraged their employees and agents from sending inmates to any hospital or other off-site medical, mental health or diagnostic service providers. By severely curtailing the use of off-site medical, mental health or diagnostic service providers, Sheriff Edwards and TKH assure that inmates with specialized and serious medical, mental health and diagnostic needs that cannot be adequately assessed or treated on-site, like Mr. Davis, will simply not receive the care they need, thereby leading to preventable seizures, injuries, and even death.

42. Sixth, Sheriff Edwards and TKH have failed to adequately train jail personnel and staff with respect to the proper assessment, classifications and treatment of inmates with serious mental health needs and/or physical needs. Further, they have failed to adequately train and follow the polices in existence at the time. This failure to train constitutes deliberate indifference to the health and safety of inmates like Mr. Davis.

43. Sheriff Edwards and TKH are, and have been, on notice that their policies, practices and/or customs are inadequate to meet the medical, physical and mental health needs of inmates like Mr. Davis. Nonetheless, Sheriff Edwards and TKH have failed to reform those polices practices and/or customs. In addition to the notice of deficiency, Sheriff Edwards and TKH took no action to rectify the problem thereby resulting in direct and approximate cause of death of Mr. Davis.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

**Violations of Civil Rights
(42 U.S.C. § 1983)**

**A.    Allegations Applicable to all Defendants**

44. Plaintiff re-alleges and incorporates by reference para graphs 1 through 43, as though fully set forth herein.

45. That the Defendants deprived Mr. Davis of his rights and privileges afforded to him under the Fourth, Fifth, Eighth and Fourteenth Amendments of the United States Constitution in violation of 42 U.S.C. § 1983.

46. The Defendants have an affirmative duty to protect inmates from the present and continuing harm and to ensure they receive adequate food, shelter, clothing and medical care.

47. That at all material times herein, Defendant Sheriff and Defendant BOCC had an obligation to the citizens of Canadian County to maintain a jail that provided inmates with access to medical care and protection.

48. That at all material times herein, Defendant Sheriff, Defendant BOCC and TKH had an obligation to the citizens of Canadian County to ensure that inmates at the Detention Center were provided reasonable medical care and that such was timely and adequate.

49. The Defendants failures of the above resulted in Mr. Davis experiencing unnecessary pain and contributed to his death.

50. The Defendants failure to adequately attend to Mr. Davis serious medical needs was in violation of his Fifth and Eighth Amendments.

51. The Defendants conduct was in deliberate indifference to the serious medical needs and safety of Mr. Davis.

52. The Defendant Edward and TKH violated their own policies and procedures by failing to conduct and repeat blood pressure checks of Mr. Davis.

53. The Defendant Edward and TKH violated their own policies and procedures by failing to properly medicate Mr. Davis.

54. The Defendant Edward and TKH exhibited a reckless disregard for the safety and welfare of the inmates detained when they continued to allow Mr. Davis to be isolated, naked, covered in feces and without proper food and water.

55. The Defendant Edward's conduct violated clearly established constitutional rights which a reasonable person in his position would have known.

56. That the Defendants conduct in failing to take any action to protect Mr. Davis acted with deliberate indifference to the safety and Constitutional rights of the Plaintiff's decedent.

57. Defendants knew there was a strong likelihood that Mr. Davis was in danger of serious personal harm and that he would try to harm himself and/or had suffered from serious seizure disordered and other health deficiencies. Mr. Davis had obvious, serious and emergent mental health and medical issues, including acute self-harm thoughts and tendencies and probable physical trauma or injuries, made known to Defendants prior to his death.

58. Nonetheless, Defendants disregarded the known and obvious risks to Mr. Davis' health and safety.

59. Defendants failed to provide, *inter alia*: an adequate or timely mental health evaluation and any assessment of Mr. Davis' historic health issues, physical trauma and/or injury, proper classification and segregation of Mr. Davis as being mentally ill, timely or adequate mental health and/or medical treatment and/or adequate monitoring and supervision for Mr. Davis while he was placed under their care, in deliberate indifference to Mr. Davis ' serious medical needs, health and safety.

60. As a direct and proximate result of Defendants' conduct, Mr. Davis experienced physical pain, severe emotional distress, mental anguish, loss of his life, and the damages alleged herein.

61. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered damages, including, but not limited to, pecuniary loss (including lost wages), grief, pain and suffering.

62. That Mr. Davis did not receive medical care.

63. That Mr. Davis did not receive mental health care.

**B.    Supervisor Liability (Sheriff Edwards)**

64. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 63, as though fully set forth herein.

65. There is an affirmative link between the aforementioned acts and/or omissions of Defendants in being deliberately indifferent to Mr. Davis's serious medical needs, health and safety and policies, practices and/or customs which Sheriff Edwards promulgated, created, implemented and/or possessed responsibility for.

66. Such policies, practices and/or customs include but are not limited to:

 a. The failure to promulgate, implement or enforce, adequate mental and physical health policies responsive to the serious medical needs of inmates like Mr. Davis;

 b. Inadequate medical triage screening that fails to identity inmates with serious medical or mental health needs;

 c. Severe limitation of the use of off-site medical, mental health and diagnostic service providers, even in emergent situations or approved emergency situation;

 d. Untimely proper medical and mental health examinations and treatment;

 e. Understaffing the medical unit;  and

 f. The failure to adequately train personnel and staff with respect to the proper assessment, classification and treatment of inmates with serious mental health needs and/or physical trauma.

67. Sheriff Edwards knew and/or it was obvious that the maintenance of the aforementioned policies, practices and/or customs posed an excessive risk to the health and safety of inmates like Mr. Davis.

68. Sheriff Edwards disregarded the known and/or obvious risks to the health and safety of inmates like Mr. Davis.

69. Sheriff Edwards, through his continued encouragement, ratification, and approval of the aforementioned policies, practices, and/or customs, in spite of their known and/or obvious inadequacies and dangers, has been deliberately indifferent to inmates', including Mr. Davis', serious medical needs.

70. There is an affirmative link between the unconstitutional acts of his subordinates and Sheriff Edward's adoption and/or maintenance of the aforementioned policies, practices and/or customs.

71. As a direct and proximate result of the aforementioned policies, practices and/or customs, Mr. Davis and Plaintiff suffered injuries and damages as alleged herein.

**C.    Liability (TKH)**

72. Plaintiff re-allege s and incorporates by reference paragraphs 1 through 71, as though fully set forth herein.

73. TKH is a "person" for purposes of 42 U.S.C. § 1983.

74. At all times pertinent hereto, TKH was acting under color of state law.

75. TKH is charged with implementing and assisting in developing the policies of the Canadian County Sheriff's Department with respect to the medical and mental health care of inmates at the Canadian County Detention Center and has shared responsibility to adequately train and supervise its employees.

76. TKH employees and officers are involved in, and exert control over, the detention center's physical and mental health program, as administered by TKH.    For instance, TKH is involved in the management of treatment and monitoring medication usage at the detention center. TKH has accepted the task of closely monitoring the detention centers mental and

physical health program and provides consultation and support, staff coverage, professional development and training and peer review.

77. There is an affirmative link between the deprivation of Mr. Davis' right to be free of cruel and unusual punishment and policies, practices and/or customs which THK and Sheriff Edwards promulgated, created, implemented and/or possessed responsibility for.

78. Such policies, practices and/or customs include, but are not limited to:

    a. The failure to promulgate, implement or enforce adequate mental and physical health policies responsive to the serious medical needs of inmates like Mr. Davis;

    b. Inadequate medical triage screening that fails to identify inmates with serious medical or mental health needs;

    c. Severe limitation of the use of off-site medical, mental health and diagnostic service providers, even in emergent situations and/or apparent emergency situations ;

    d. Untimely medical and mental health examinations and treatment;

    e. Understaffing the medical unit; and

    f. The failure to adequately train TKH employees and/or agents with respect to the proper assessment, classification and treatment of inmates with serious mental health needs and/or physical trauma.

79. TKH knew and/or it was obvious that the maintenance of the aforementioned policies, practices and/or customs posed an excessive risk to the health and safety of inmates like Davis.

80. TKH disregarded the known and/or obvious risks to the health and safety of inmates like Mr. Davis.

81. TKH tacitly encouraged, ratified, and/or approved of the acts and/or omissions alleged herein, knew (and/or it was obvious) that such conduct was unjustified and would result in violations of constitutional rights , and was deliberately indifferent to the serious medical and mental health needs of inmates like Mr. Davis.

82. As a direct and proximate result of the aforementioned policies, practices and/or customs Mr. Davis and Plaintiff suffered injuries and damages as alleged herein.

## SECOND CLAIM FOR RELIEF

### Negligence/Wrongful Death

### (Defendants Sheriff Edward and TKH)[1]

83. Plaintiff re-alleges and incorporate s by reference paragraphs1 through 82, as though fully set forth herein.

84. Defendants owed a duty to Mr. Davis, and all other inmates in custody, to use reasonable care to provide inmates in need of medical attention with appropriate assessment, evaluation, treatment and supervision.

85. Defendants breached that duty by failing to provide Mr. Davis with prompt and adequate medical and psychiatric assessment, evaluation, treatment and supervision despite the obvious need.

---

[1] Plaintiff's tort claims are properly brought against TKH and its employees. The Oklahoma Supreme Court held in *Sullins v. American Medical Response of Oklahoma, Inc.*, 23 P .3d 259, 264 (Okla. 2001), that a private entity such as TKH is not an "entity designated to act in behalf of the State or political subdivision [which includes a public trust]" for the purposes of the exemption under 51 Okla. Stat. § 152(2), merely because it contracts with a public trust to provide services which the public trust is authorized to provide. See also *Arnold v. Cornell Companies, Inc.*, 2008 WL 4816507 (W.D.Okla., Oct. 29, 2008).

86. Defendants' breaches of the duty of care include, *inter alia*, the failure to: provide an adequate or timely mental and physical health evaluation; provide any assessment of Mr. Davis' probable physical trauma and/or mental distress and history; provide proper classification and segregation of Mr. Davis as being mentally and physical ill; provide timely or adequate mental health and/or medical treatment for Mr. Davis; conduct appropriate psychiatric and medical assessment; promptly evaluate and transfer Mr. Davis to an appropriate and qualified psychiatric treatment or medical facility; provide adequate monitoring or supervision of Mr. Davis' condition (including, *inter alia*, the failure to take his vital signs); and take precautions to prevent Mr. Davis from harming himself or otherwise being harmed.

87. That Defendant Sheriff Edward hired TKH for purposes of providing medical care to inmates and persons detained at Canadian County Jail.

88. That the identified acts or omissions by Defendants are sufficiently harmful to evidence a deliberate indifference to Mr. Davis serious medical needs by the Defendants TKH and Edwards.

89. That the identified acts or omissions by Defendants resulted in Mr. Davis suffering an unnecessary and wanton infliction of pain thereby constituting cruel and unusual punishment forbidden by the Fifth and Eighth Amendment.

90. That identified acts or omissions deprived Mr. Davis of the minimal civilized measures of life's necessities.

91. All of the foregoing was done with reckless disregard of Mr. Davis's constitutional rights.

92. That the conduct at issue above also constitute reckless intentional and life-threating conduct that resulted in Mr. Davis' death and entitled Plaintiff to an award of punitive damages.

93. As a direct and proximate cause of Defendants' negligence, Mr. Davis experienced physical pain, severe emotional distress, mental anguish, loss of his life, and the damages alleged herein.

94. As a direct and proximate cause of Defendants' negligence, Plaintiff has suffered damages, including, but not limited to, pecuniary loss (including lost wages), grief, and pain and suffering.

## PUNITIVE DAMAGES

95. Plaintiff re-alleges and incorporates by reference paragraphs 1 though 94, as though fully set forth herein.

96. Plaintiff is entitled to punitive damages on her negligence/wrongful death claim against Defendants TKH and Sheriff Edwards in his individual capacity as their conduct, acts and omissions alleged herein constitute reckless disregard for Mr. Davis' rights.

WHEREFORE, based on the foregoing, Plaintiff prays that this Court grant her the relief sought, including, but not limited to, actual damages in excess of Seventy-Five Thousand Dollars ($75,000.00), with interest accruing from date of filing of suit, punitive damages in excess of Seventy-Five Thousand Dollars ($75,000.00), reasonable attorney fees, and all other relief deemed appropriate by this Court.

Date:


ATTORNEY'S LIEN CLAIMED
JURY TRIAL DEMANDED

Respectfully submitted,

Dustin J. Hopson, OBA #19485
The Blau Law Firm
101 Park Avenue, #600
Oklahoma City, OK  73102
Telephone: (405) 232-2528
Email:  dustin@blaulawfirm.com