

19 NE 50th Street
Oklahoma City, OK 73105
(405) 516-0276
www.turnkeyhealthclinics.com

May 16, 2016

Guy Ellison, Captain
208 W Rogers
El Reno, OK 73036

**RE: INMATE MEDICAL SERVICES**

Captain Ellison:

Thank you for your continued service to citizens of Canadian County. As Oklahoma residents, we appreciate your dedication to keep our communities safe.

We are honored for your continued trust in our medical program at your detention facility. We hope we have lived up to our promises and have appropriately addressed any concerns you may have expressed. If any concerns have not been addressed to your satisfaction, please contact me, so I can take the appropriate actions to get them resolved.

As discussed during our initial meetings, Turn Key does not automatically build in reimbursement increases for each contract renewal year. Instead, we evaluate our operation and request what we believe to be a fair adjustment. Based on our analysis, we would like to request a 1.75% increase for the next contract year, which begins July 1, 2016. Our requested increase is significantly below the national Consumer Pricing Index (CPI) increase for medical services over the past 12 months, which was 3.7%.

I have included an amendment for your review. If you are agreeable to the terms of renewal, please return a signed copy to our corporate office or by email. If you have questions or concerns, please call me at your earliest convenience.

Thank you for your continued partnership, and we look forward to the opportunity to continue to serve your facility.

Sincerely,

Flint Junod, Chief Operating Officer
Turn Key Health Clinics, LLC.
fjunod@turnkeyhealthclinics.com
(405) 537-7954

**EXHIBIT 1**

**CANADIAN COUNTY SHERIFF'S OFFICE**
**CONTRACT FOR MEDICAL STAFFING AND ADMINISTRATION**
**<u>FIRST</u> AMENDMENT**

This Amendment shall serve as a revision to the Contract for Medical Staffing and Administration (the "Main Agreement") between the **Canadian County Sheriff's Office** ("Authority") and **Turn Key Health Clinics, LLC.** ("Contractor") which initiated on July 1, 2015 at the Canadian County Jail.

In consideration to the mutual covenants contained herein, the receipt and sufficiency of which are hereby acknowledged, it is agreed upon as follows:

1.  The terms and conditions of this Amendment, as set forth below, shall be effective as of July 1, 2016.

2.  Pursuant to Section 2.1 of the Main Agreement, the parties hereby acknowledged the Contract shall be revised to require:
    *   The reimbursement from Authority to Contractor is to be made on a monthly basis in the amount of Fourteen Thousand Four Hundred Thirteen Dollars and zero cents ($14,413.00), a 1.75% increase for the new contract year. The reimbursement shall be pro-rated for any partial months and subject to any reconciliation as applicable.

3.  In all other respects, the terms and conditions of the Main Agreement shall continue unchanged and remain in full force and effect.

Turn Key Health Clinics, LLC

By: _____ 5/16/16
    Flint Junod, Chief Operating Officer

Canadian County Sheriff's Office

By: _____
    Sheriff, Canadian County, O...

TURNKEY-01          DMORRIS

**ACORD**

## CERTIFICATE OF LIABILITY INSURANCE

| | DATE (MM/DD/YYYY) |
|---|---|
| | 6/9/2016 |

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW.  THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT:  If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement.  A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | | CONTACT NAME: Deb Morris | |
|---|---|---|---|
| BancFirst Insurance Services, Inc.<br>5400 N. Grand Blvd  Suite 400<br>Oklahoma City, OK 73112 | | PHONE (A/C, No, Ext): (405) 948-7930 | FAX (A/C, No): (405) 948-7346 |
| | | E-MAIL ADDRESS: | |
| | | INSURER(S) AFFORDING COVERAGE | NAIC # |
| INSURED | | INSURER A : Evanston Insurance Company | 35378 |
| Turn Key Health Clinics, LLC<br>19 NE 50th Street<br>Oklahoma City, OK 73105 | | INSURER B : American Mercury Insurance | 16810 |
| | | INSURER C : | |
| | | INSURER D : | |
| | | INSURER E : | |
| | | INSURER F : | |

| COVERAGES | CERTIFICATE NUMBER: | REVISION NUMBER: |
|---|---|---|

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED.  NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | | |
|---|---|---|---|---|---|---|---|---|---|---|
| A | X | COMMERCIAL GENERAL LIABILITY | | | SM912110 | 02/10/2016 | 02/10/2017 | EACH OCCURRENCE | $ | 1,000,000 |
| | | CLAIMS-MADE  X  OCCUR | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ | 50,000 |
| | | | | | | | | MED EXP (Any one person) | $ | 5,000 |
| | | | | | | | | PERSONAL & ADV INJURY | $ | 1,000,000 |
| | | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | GENERAL AGGREGATE | $ | 3,000,000 |
| | X | POLICY   PRO-JECT   LOC | | | | | | PRODUCTS - COMP/OP AGG | $ | 1,000,000 |
| | X | OTHER: Professional Liability | | | | | | Occurrence | $ | 1,000,000 |
| B | X | AUTOMOBILE LIABILITY | | | BA350000003038 | 07/23/2016 | 07/23/2017 | COMBINED SINGLE LIMIT (Ea accident) | $ | 1,000,000 |
| | X | ANY AUTO | | | | | | BODILY INJURY (Per person) | $ | |
| | | ALL OWNED AUTOS   SCHEDULED AUTOS | | | | | | BODILY INJURY (Per accident) | $ | |
| | | HIRED AUTOS   NON-OWNED AUTOS | | | | | | PROPERTY DAMAGE (Per accident) | $ | |
| | | | | | | | | | $ | |
| | | UMBRELLA LIAB   OCCUR | | | | | | EACH OCCURRENCE | $ | |
| | | EXCESS LIAB   CLAIMS-MADE | | | | | | AGGREGATE | $ | |
| | | DED   RETENTION $ | | | | | | | $ | |
| | | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY      Y/N | | | | | | PER STATUTE   OTH-ER | | |
| | | ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED?  N/A<br>(Mandatory in NH) | | | | | | E.L. EACH ACCIDENT | $ | |
| | | if yes, describe under DESCRIPTION OF OPERATIONS below | | | | | | E.L. DISEASE - EA EMPLOYEE | $ | |
| | | | | | | | | E.L. DISEASE - POLICY LIMIT | $ | |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES  (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| Canadian County Sheriff<br>208 W Rogers<br>El Reno, OK 73036 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS.<br><br>AUTHORIZED REPRESENTATIVE<br><br>*Tim Faulk* |

ACORD 25 (2014/01)          The ACORD name and logo are registered marks of ACORD          © 1988-2014 ACORD CORPORATION.  All rights reserved.



TURNKEY-01                    DMORRIS

# CERTIFICATE OF LIABILITY INSURANCE

| | DATE (MM/DD/YYYY) |
|---|---|
| | 2/4/2016 |

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW.  THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT:  If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed. IF SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement.  A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | | | CONTACT NAME: Deb Morris | | |
|---|---|---|---|---|---|
| BancFirst Insurance Services, Inc. 5400 N. Grand Blvd Suite 400 Oklahoma City, OK 73112 | | | PHONE (A/C, No, Ext): (405) 948-7930 | | FAX (A/C, No): (405) 948-7346 |
| | | | E-MAIL ADDRESS: | | |
| | | | INSURER(S) AFFORDING COVERAGE | | NAIC # |
| | | | INSURER A : Evanston Insurance Company | | 35378 |
| INSURED | | | INSURER B : | | |
| Turn Key Health Clinics, LLC 9925 S. Penn, Suite 110 Oklahoma City, OK 73159 | | | INSURER C : | | |
| | | | INSURER D : | | |
| | | | INSURER E : | | |
| | | | INSURER F : | | |

## COVERAGES                    CERTIFICATE NUMBER:                    REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED.  NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|---|
| A | X | COMMERCIAL GENERAL LIABILITY | | | SM912110 | 02/10/2016 | 02/10/2017 | EACH OCCURRENCE | $ 1,000,000 |
| | | CLAIMS-MADE X OCCUR | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ 50,000 |
| | | | | | | | | MED EXP (Any one person) | $ 5,000 |
| | | | | | | | | PERSONAL & ADV INJURY | $ 1,000,000 |
| | | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | GENERAL AGGREGATE | $ 3,000,000 |
| | X | POLICY [ ] PRO-JECT [ ] LOC | | | | | | PRODUCTS - COMP/OP AGG | $ 1,000,000 |
| | X | OTHER: Professional Liability | | | | | | Occurrence | $ 1,000,000 |
| | | AUTOMOBILE LIABILITY | | | | | | COMBINED SINGLE LIMIT (Ea accident) | $ |
| | | ANY AUTO | | | | | | BODILY INJURY (Per person) | $ |
| | | ALL OWNED AUTOS [ ] SCHEDULED AUTOS | | | | | | BODILY INJURY (Per accident) | $ |
| | | HIRED AUTOS [ ] NON-OWNED AUTOS | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | | $ |
| | | UMBRELLA LIAB [ ] OCCUR | | | | | | EACH OCCURRENCE | $ |
| | | EXCESS LIAB [ ] CLAIMS-MADE | | | | | | AGGREGATE | $ |
| | | DED [ ] RETENTION $ | | | | | | | $ |
| | | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY       Y / N | | | | | | [ ] PER STATUTE [ ] OTH-ER | |
| | | ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? (Mandatory in NH) | N / A | | | | | E.L. EACH ACCIDENT | $ |
| | | If yes, describe under DESCRIPTION OF OPERATIONS below | | | | | | E.L. DISEASE - EA EMPLOYEE | $ |
| | | | | | | | | E.L. DISEASE - POLICY LIMIT | $ |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)

RECEIVED

FEB  5 2016

CAN CO SHERIFF'S OFFICE

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. |
| Canadian County Sheriff 208 W Rogers El Reno, OK 73036 | AUTHORIZED REPRESENTATIVE  Tim Faulk |

© 1988-2014 ACORD CORPORATION.  All rights reserved.

ACORD 25 (2014/01)              The ACORD name and logo are registered marks of ACORD

Effective Date: 7/1/2015
Last Modified:



### Acknowledgement of Receipt of Drug/Alcohol Policy

This is to acknowledge that I have received a copy of Turn Key Health Clinic's Drug/Alcohol Policy. I understand that, as a condition of my employment, I may not report to work or remain on duty with ANY detectable levels of illicit drugs or alcohol in my body, and that I am further obligated to comply with the remaining provisions of the Policy.

I understand that, from time to time, I may be requested to take drug/alcohol tests in accordance with the provisions of the Policy. I specifically agree to take such tests, and to be bound by the results thereof (subject to any right which I may have to obtain independent confirmation of such test results). I further understand that, if I refuse to take any drug/alcohol test, which is requested by Turn Key Health Clinics in accordance with this Policy, I am subject to immediate discharge. In addition, I acknowledge that I have been informed that Oklahoma law may treat my refusal of testing as grounds to disqualify me from receiving unemployment compensation.

By accepting and/or continuing my employment with Turn Key Health Clinics, I agree to be bound by all provisions of its Drug/Alcohol Policy, including any amendments or modifications, which may be made in the future. I understand that any changes of the Policy will be posted on the Employee Bulletin Board, and that it is my obligation to monitor such notices in order to familiarize myself with any changes in this Policy.

_RGoodman, CM_
Signature of Employee/ Applicant

Date: _8/21/15_

_R. Goodman, CM_
Print Name of Employee/Applicant

Witness: _[signature]_

Date: _8/21/15_

RECEIVED

AUG 2 5 2015

CAN CO SHERIFF'S OFFICE

24

Effective Date: 7/1/2015
Last Modified:

TURN KEY HEALTH

**Acknowledgement of Receipt of Turn Key Health Clinic's**
**Corporate Employee Policies**

This is to acknowledge that I have received a copy of Turn Key Health Clinic's Corporate Employee Policies. I understand that, as a condition of my employment, I must abide by these Corporate Employee Policies.

By accepting and/or continuing my employment with Turn Key Health Clinics, I agree to be bound by all provisions of its Corporate Employee Policies, including any amendments or modifications, which may be made in the future. I understand that any changes of the Policy will be posted and/or given to me in writing, and that it is my obligation to monitor such notices in order to familiarize myself with any changes in this Policy.

Signature of Employee/ Applicant                    Date: 8/21/15

R Goodman, DO
Print Name of Employee/Applicant

Witness:                                              Date: 8/21/15

25

Effective Date: 7/1/2015
Last Modified:

TURN KEY HEALTH

**Acknowledgement of Receipt of Turn Key Health Clinic's**
**Corporate Employee Policies**

This is to acknowledge that I have received a copy of Turn Key Health Clinic's Corporate Employee Policies. I understand that, as a condition of my employment, I must abide by these Corporate Employee Policies.

By accepting and/or continuing my employment with Turn Key Health Clinics, I agree to be bound by all provisions of its Corporate Employee Policies, including any amendments or modifications, which may be made in the future. I understand that any changes of the Policy will be posted and/or given to me in writing, and that it is my obligation to monitor such notices in order to familiarize myself with any changes in this Policy.

*Stephanie Manning, LPN*                           Date: 8/20/15
Signature of Employee/ Applicant

*Stephanie Manning, LPN*
Print Name of Employee/Applicant

Witness: _____                Date: 8/20/15

Effective Date: 7/1/2015
Last Modified:



**Acknowledgement of Receipt of Drug/Alcohol Policy**

This is to acknowledge that I have received a copy of Turn Key Health Clinic's Drug/Alcohol Policy. I understand that, as a condition of my employment, I may not report to work or remain on duty with ANY detectable levels of illicit drugs or alcohol in my body, and that I am further obligated to comply with the remaining provisions of the Policy.

I understand that, from time to time, I may be requested to take drug/alcohol tests in accordance with the provisions of the Policy. I specifically agree to take such tests, and to be bound by the results thereof (subject to any right which I may have to obtain independent confirmation of such test results). I further understand that, if I refuse to take any drug/alcohol test, which is requested by Turn Key Health Clinics in accordance with this Policy, I am subject to immediate discharge. In addition, I acknowledge that I have been informed that Oklahoma law may treat my refusal of testing as grounds to disqualify me from receiving unemployment compensation.

By accepting and/or continuing my employment with Turn Key Health Clinics, I agree to be bound by all provisions of its Drug/Alcohol Policy, including any amendments or modifications, which may be made in the future. I understand that any changes of the Policy will be posted on the Employee Bulletin Board, and that it is my obligation to monitor such notices in order to familiarize myself with any changes in this Policy.

_Stephanie Manning, LPN_                     Date: _8/20/15_
Signature of Employee/ Applicant

_Stephanie Manning, LPN_
Print Name of Employee/Applicant

Witness: _[signature]_                        Date: _8/50/15_

24



TURNKEY-01          DMORRIS

# CERTIFICATE OF LIABILITY INSURANCE

| | DATE (MM/DD/YYYY) |
|---|---|
| | 6/23/2015 |

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: | Deb Morris | | |
|---|---|---|---|---|
| BancFirst Insurance Services, Inc.<br>5400 N. Grand Blvd  Suite 400<br>Oklahoma City, OK 73112 | PHONE (A/C, No, Ext): (405) 948-7930 | | FAX (A/C, No): (405) 948-7346 | |
| | E-MAIL ADDRESS: | | | |
| | INSURER(S) AFFORDING COVERAGE | | | NAIC # |
| | INSURER A : Evanston Insurance Company | | | 35378 |
| INSURED | INSURER B : | | | |
| Turn Key Health Clinics, LLC<br>9925 S. Penn, Suite 110<br>Oklahoma City, OK 73159 | INSURER C : | | | |
| | INSURER D : | | | |
| | INSURER E : | | | |
| | INSURER F : | | | |

## COVERAGES                    CERTIFICATE NUMBER:                    REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| A | X COMMERCIAL GENERAL LIABILITY | | | SM905624 | 02/10/2015 | 02/10/2016 | EACH OCCURRENCE | $ 1,000,000 |
| | ☐ CLAIMS-MADE X OCCUR | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ 50,000 |
| | X PROFESSIONAL-claims | | | | | | MED EXP (Any one person) | $ 5,000 |
| | | | | | | | PERSONAL & ADV INJURY | $ 1,000,000 |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | GENERAL AGGREGATE | $ 3,000,000 |
| | X POLICY ☐ PRO-JECT ☐ LOC | | | | | | PRODUCTS - COMP/OP AGG | $ 1,000,000 |
| | OTHER: | | | | | | | $ |
| | AUTOMOBILE LIABILITY | | | | | | COMBINED SINGLE LIMIT (Ea accident) | $ |
| | ☐ ANY AUTO | | | | | | BODILY INJURY (Per person) | $ |
| | ☐ ALL OWNED AUTOS  ☐ SCHEDULED AUTOS | | | | | | BODILY INJURY (Per accident) | $ |
| | ☐ HIRED AUTOS  ☐ NON-OWNED AUTOS | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| | ☐ UMBRELLA LIAB ☐ OCCUR | | | | | | EACH OCCURRENCE | $ |
| | ☐ EXCESS LIAB ☐ CLAIMS-MADE | | | | | | AGGREGATE | $ |
| | ☐ DED ☐ RETENTION $ | | | | | | | $ |
| | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY | | | | | | ☐ PER STATUTE  ☐ OTH-ER | |
| | ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? (Mandatory in NH) | Y/N N/A | | | | | E.L. EACH ACCIDENT | $ |
| | If yes, describe under DESCRIPTION OF OPERATIONS below | | | | | | E.L. DISEASE - EA EMPLOYEE | $ |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES  (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)

RECEIVED

JUN 2 6 2015

CAN CO SHERIFF'S OFFICE

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| Canadian County Sheriff's Office<br>208 W Rogers<br>El Reno, OK 73036 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. |
| | AUTHORIZED REPRESENTATIVE<br>_Tim Faulk_ |

© 1988-2014 ACORD CORPORATION. All rights reserved.

ACORD 25 (2014/01)              The ACORD name and logo are registered marks of ACORD



# CANADIAN COUNTY, OKLAHOMA

## CONTRACT FOR

## MEDICAL STAFFING AND ADMINISTRATION

## FOR

## CANADIAN COUNTY JAIL

For

CANADIAN COUNTY SHERIFF'S OFFICE
RANDALL EDWARDS, SHERIFF
405-422-3187

208 West Rogers
El Reno, OK 73036

STATE OF OKLAHOMA
CANADIAN COUNTY
FILED OR RECORDED

JUN 2 2 2015

SHELLEY DICKERSON
COUNTY CLERK
15610

This Contract is entered into between the Board of County Commissioners of Canadian County, Oklahoma and the Canadian County Sheriff's Office ("Agency") and Turn Key Health Clinics, LLC ("Contractor"). The purpose of this Contract is to contract for the Medical Staffing and Administration of the Canadian County Jail, 208 West Rogers El Reno, OK 73036 (herein called the "Facility") under the terms and conditions detailed in the Contract.

# I. DUTIES AND RESPONSIBILITIES OF THE CONTRACTOR

## 1.1 SCOPE OF CONTRACT

Contractor shall be the sole supplier and/or coordinator of the health care delivery system at the Facility. Contractor shall be responsible for all medical care for all inmates (except Work Release inmates who shall, when in the Facility, receive only emergency care from the provider) at the Facility up to the limits described in this Contract. This responsibility of the Contractor for the medical care of an inmate commences with the commitment of the inmate to the custody of the Facility and ends with the release of the inmate.

## 1.2 INSURANCE

The Contractor will carry professional liability insurance in minimum amounts of One Million Dollars ($1,000,000.00) per occurrence and Three Million Dollars ($3,000,000.00) in the aggregate annually during the entire term and any renewal term of this Contract.

## 1.3 COMPLIANCE WITH APPLICABLE LAW

The Contractor will comply with the standards set forth by the Oklahoma Department of Health for the duration of the term of this Agreement with the Agency.

## 1.4 CONTRACTOR COOPERATION

All Contractor personnel, including the personnel of its subcontractor and agents, will be subject to security background checks and clearances by the Agency. In each instance, the individual and the Contractor will provide such cooperation as may be reasonably required to complete the security check. The Agency agrees to perform such security checks in a timely manner and not unduly delay such checks.

## 1.5 CONTAMINATED WASTE

The Contractor shall be responsible for the disposal of all general waste, including infectious or hazardous waste. The material must be removed from the Facility and disposed of as regulated by federal, state and local laws.

## 1.6 PHARMACEUTICAL

2

The Contractor shall provide a complete pharmaceutical system for inmates housed at the Facility. The Contractor will be responsible to pay the costs of all pharmaceutical as required by current applicable law up to the annual aggregate limits set forth by this Contract.

The Contractor shall provide for pharmaceutical services to assure the availability of prescribed medications within a reasonable time period of the order of issue being written except where such medications are not readily available in the local community. Pharmaceutical services shall be consistent with State and Federal regulations, and must be monitored by a licensed qualified pharmacist. The Agency agrees to allow the use of an inmate's home medication, as appropriate, upon the verification of the medication by Contractor personnel.

The Contractor shall provide for the recording of the administration of medications in a manner and on a form pre-approved that includes documentation of the fact that inmates are receiving and ingesting their prescribed medications. Documentation will also be required when an inmate's ordered medication was not administered and the reason given. Medication administration and medication documentation training shall be made available for Agency staff for times when Contractor personnel are not on-site to administer medications.

## 1.7 INMATE MEDICAL FEE FOR SERVICE SYSTEM

The Contractor may obtain an inmate fee for medical services authorization slip from each inmate medical encounter as directed by the Agency. Any inmate charges will be established by the Agency in accordance with Oklahoma State Statutes. Fees for services may be collected directly by the Agency and will be utilized by the Agency. The Contractor will not collect any of the fees from the inmates.

## 1.8 MAXIMUM LIABILITY

Contractor's Maximum annual liability for pharmaceutical services, on-site laboratory services, and on-site x-ray services provided to inmates will be twelve thousand dollars ($12,000.00). The aggregate limits shall be pro-rated accordingly on a daily rate basis for services provided during a partial year of services. The Contractor shall monitor and manage invoices for off-site services. Upon receipt of invoice for off-site services, the Contractor shall review and verify the accuracy of the services billed. Once verified, the Contractor shall forward the invoice to the Agency for processing in accordance with policy of the Agency. All financial liability for offsite services shall rest upon the Agency, not the Contractor.

## 1.9 IMMUNITY FROM LIABILITY

The Contractor agrees to defend, indemnify and to hold the Agency and Canadian County and their trustees, commissioners, representatives, employees and agents harmless for, from, and against any and all claims, suits, expenses, damages, or injuries to persons or

3

property or other liabilities, including reasonable attorney fees and court costs arising out of or relating to any failure to comply with this Contract or with any applicable state or federal rule or regulation, or arising out of a result of performance or failure of the Medical Staffing or Contractor's administrative staff to properly provide services pursuant to the terms of this Contract; including but not limited to claims for violation of privacy, medical malpractice, governmental enforcement or remedial actions, federal or state discrimination claims and tort actions. Provided that, if a final decision is made by the Agency to deny payment, or instructs the Contractor to deny payment for any off-site care, specialty care or pharmaceutical service, Contractor will not be required to indemnify Agency for claims related to that decision. Immunity from liability shall not extend to the Agency in the event of neglect or omission of appropriate action by Agency personnel.  The terms and provisions of this Section 1.9 shall survive the termination of this Contract.

## 1.10 FILING WITH INSURANCE

Contractor will be responsible to ensure that, whenever possible, insurance claims are filed for inmate medical expenses.

## 1.11 NEGOTIATION OF DISCOUNTS

Contractor shall use its best efforts to negotiate discounts for medical services and pharmaceuticals.  In the event the maximum liability of the Contractor is met during the Contract period, Agency will be allowed to use the contractual discounts negotiated by Contractor.

## 1.12 PERSONNEL RECORD KEEPING

The Contractor shall, upon request, provide to the Agency proof of licenses and/or certificates for all professional staff.  In addition, malpractice insurance must be in place for all physicians and Nurse Practitioners/Physician Assistants, and other employees or agents of Contractor providing medical or mental health services to inmates.

## 1.13 SCHEDULES

Copies of staffing schedules encompassing all health care staff are to be submitted to the Jail Administrator upon written request.  Staffing schedules shall be provided in advance in minimum of two (2) week intervals.

## 1.14 STATISTICS

Statistics will be maintained and submitted to the Jail Administrator on a monthly basis, as requested.

## 1.15 GRIEVANCES

4

Grievances shall be monitored to detect areas of concern. Inmate grievances shall be documented according to Facility policy, and a response shall be prepared by Contractor personnel. All information in regard to grievances shall be made available to the Jail Administrator at his request.

## 1.16 EMERGENCY ASSISTANCE

The Contractor shall, in times of emergency or threat thereof, whether accidental, natural or man-made, provide medical assistance to the Facility to the extent or degree required by policies and procedures.

## 1.17 MEDICAL AND NURSING SERVICES PROVIDED

1. All medical and mental health personnel providing services through Contractor under this Contract shall be the employees and/or agents of Contractor and not of the Agency. Such individuals shall hereby be referred to as the "Medical Staffing". All wages, worker's compensation, insurance, benefits, vacations, and claims of any kind relating to the Medical Staffing shall be the sole responsibility of Contractor and not of Agency. All Medical Staffing shall be covered by professional liability insurance with limits not less than $1,000,000.00 per occurrence and $3,000,000.00 in the aggregate.

2. Contractor shall provide medical unit coverage seven days a week, including at a **minimum**:

   a. **56 hours a week of on-site Licensed Nursing coverage, including holidays. This will require approximately 1.4 FTEs;**
   b. **A Physician or midlevel provider (ARNP or PA) will provide an on-site clinic on a regular basis, but not less than once per week, up to 3 hours per week as needed;**
   c. **A Physician or midlevel provider who will provide 24 hours a day, seven days a week on-call coverage for consultation on an as needed basis;**

3. The Contractor shall provide an intake screening review, including medical history forms, for all inmates upon admission to the facility, inmates identified with health concerns will have a clinical health review with Contractor personnel no later than fourteen (14) days after the inmate's arrival at the Facility.

4. Medications as prescribed;

5. Sick call triage and follow-up; **and**

6. Appropriate and timely response to medical needs and emergencies.

7. Personnel files (or copies thereof) of Contractor's employees assigned to the Facility are to be maintained at Turn Key's corporate office and shall be available to the Agency upon written request.

8. Contractor shall arrange healthcare services for any pregnant inmate, but Contractor shall not bear the cost of any healthcare services provided to the inmate or the infant(s).

9. Contractor shall not be responsible for the provision of eyeglasses or any other vision services other than care for eye injuries or diseases. In the event any inmate requires off-site vision services, including ophthalmologist services, the Agency shall bear the cost of such vision or eye care services;

10. Contractor shall arrange and bear the cost of all on-site laboratory and radiology services for inmates. Contractor shall arrange on-site laboratory and radiology services to the extent reasonably possible. To the extent laboratory and radiology services are required and cannot be rendered on-site, Contractor shall make appropriate off-site arrangements for rendering such care. Contractor will arrange and coordinate with the Sheriff's office for the transportation for such off-site services. Costs for such on-site and off-site services shall be included as defined in the maximum liability amount in Section 1.8.

## 1.18 SATISFACTION WITH HEALTHCARE STAFF

In recognition with the sensitive nature of correction facility operations, if the Sheriff becomes dissatisfied with any member of the Contractor's medical staff, the Sheriff shall provide Contractor written notice of such dissatisfaction and the reasons therefore. Following receipt of such notice, Contractor shall use commercially reasonable efforts to resolve the dissatisfaction. If the problem is not resolved to the satisfaction of the Sheriff within ten (10) business days following the Contractor's receipt of the notice, Contractor shall remove the individual from providing services at the Facility within a reasonable timeframe considering the affects of such removal on Contractor's ability to deliver healthcare services and recruitment/hiring of an acceptable replacement. The Sheriff reserves the right to revoke the security clearance of any of Contractor's Medical Staffing at any time.

## 1.19 DENTAL CARE

As indicated, the Contractor shall provide basic oral screening of inmates by on-site medical personnel. Contractor shall arrange emergency dental services only if its medical director determines that such care is medically necessary, and under the care of a licensed dentist. Dental care will be considered off-site medical care and costs associated with care shall be the responsibility of the Agency

## 1.20 HOSPITALIZATION

6

Contractor will arrange hospitalization for inmates who, in the opinion of the treating provider and/or the medical director, require hospitalization. Costs for such services shall be considered off-site medical care and costs associated with care shall be the responsibility of the Agency.

### 1.21 TESTIFYING IN COURT

Contractor personnel shall be aware that they might, from time to time, be subpoenaed to testify in court or at a deposition regarding medical treatment. Overtime, if any, associated with this obligation is the responsibility of the Contractor. Contractor will keep the Agency informed of any and all requests.

### 1.22 POLICIES AND PROCEDURES / PROTOCOLS

A written manual of the Agency and Contractor's standardized policies and defined procedures will be available at all times for Contractor personnel. Contractor's nursing protocols shall be devised and approved by a physician licensed in the State of Oklahoma. Policies and procedures and nursing protocols will be reviewed and revised as necessary.

### 1.23 LABORATORY AND X-RAY SERVICES

The Contractor shall provide for necessary laboratory and x-ray services. Costs for such services shall be included in the maximum liability amount in Section 1.8.

### 1.24 TRANSPORTATION

The Contractor will arrange for inmate transportation for emergency ambulance care. The cost of these services will be considered off-site medical care costs associated with care shall be the responsibility of the Agency. All other non-emergent transportation relating to the provision of health services shall be the responsibility of the Agency.

### 1.25 NON-INMATE HEALTH SERVICES

Non-inmate health services shall be provided in the form of emergency care for Facility staff and visitors for the purpose of stabilizing the condition and arranging for transport. Emergency services include first aid, assessment, stabilization and the coordination of transport of employees or visitors who become ill or injured in the Facility.

The Contractor shall make available the Hepatitis B vaccination program and annual Tuberculosis Skin Testing (TST) for all Facility staff as requested by the Sheriff. However, the Agency will bear the cost of the vaccine and serum.

### 1.26 MEDICAL RECORDS REQUIREMENTS

7

**117087472.**   A medical record consistent with state regulations and community standards of practice shall be maintained for each inmate held beyond the first appearance in court.   These records shall be kept separate from the jail confinement records of the inmate.

**117087473.**   Individual health care records will be initiated and maintained for every inmate regarding medical, dental, or mental health services received as a result of the inmate screening process and for services rendered following the inmate's assignments to a housing area.

**117087474.**   In any case where medical care is at issue, or in any criminal or civil litigation where the physical or mental condition of an inmate is at issue, the Contractor shall make accessible to the Sheriff or District Attorney, such records and, upon request, provide copies.   The Contractor additionally acknowledges compliance with and understanding of all applicable HIPAA requirements as they apply to correctional facilities.

**117087475.**   The Contractor acknowledges and agrees that all records prepared or acquired by the Contractor during performance of services under the Contract are the property of the Canadian County Sheriff's Office.   The Contractor shall be considered the records custodian during the duration of the Contract.  Upon the termination of this Contract, all inmate medical records shall remain in the care and custody of the Agency.

**117087476.**   If an inmate medical record cannot be located within twenty-four (24) hours of a discovered loss, the Jail Administrator shall be immediately notified.

**117087477.**   Inactive medical records will be maintained in accordance with the laws of the State of Oklahoma and the American Medical Association.

**111988928.**   Any and all legal actions or requests affecting Canadian County inmates and/or the Contractor's performance at Canadian County must be communicated, in writing, to the Agency within twenty-four hours of the Contractor's receipt.

## 1.27 INMATES FROM OTHER JURISDICTIONS

The Contractor will provide on-site services for inmates incarcerated at the Facility for the Oklahoma Department of Corrections, Oklahoma municipalities, and other custodial jurisdictions. However, off-site, specialty services, and pharmaceutical costs associated with inmates from other jurisdictions shall not be the responsibility of the Contractor. The Contractor shall promptly notify the Jail Administrator for any needed pharmaceutical, specialty service or off-site care for such inmates and shall provide documentation of required treatment to the custodial jurisdiction as requested. The Contractor shall submit all related bills to the Sheriff's Office to ensure reimbursement to the Agency of all

outside medical expenses and cost of pharmaceuticals that may have incurred on behalf of such inmates.

## II. DUTIES OF AGENCY

### 2.1 REIMBURSEMENT FOR SERVICES

The reimbursement for this initial Contract from Agency to Contractor is to be made on a monthly basis (in arrears) in the amount of Fourteen Thousand One Hundred Sixty-Five Dollars and zero cents ($14,165.00), pro-rated for any partial months and subject to any reconciliation as applicable.

This Agreement shall cover services provided by the Contractor for the Agency with a facility average daily population (ADP) up to two hundred twenty (220) inmates. The ADP will be calculated as the monthly total for all inmates in the jail at 8:00am each day divided by the number of days in that month.  Should the ADP exceed 220 inmates for three consecutive months, the Contractor and Agency agree to renegotiate the terms of reimbursement for the Contract.

### 2.2 USE OF FACILITY AND EXISTING MEDICAL AND OFFICE EQUIPMENT

The Agency shall be responsible for providing the non-exclusive use and access to certain office equipment (copier, fax machine, phones, desks, office chairs, etc.), office supplies (chart folders, pens, paper, etc.) durable medical equipment (exam tables, sinks, cabinets, etc.) and phone service required for the administrative operation of the medical unit. Agency agrees that Contractor will be provided appropriate space in the Facility to perform all required duties and that the Contractor will be allowed use of the current office, medical equipment and supplies currently at the facility at the initiation of services.

In the event additional durable office or medical equipment needs to be purchased, it will be the Agency's responsibility to purchase the required equipment, and it will be owned by the Agency. Provided that, Contractor shall provide and bear the cost of standard disposable medical supplies.

## III.   GENERAL TERMS AND CONDITIONS

### 3.1 ALTERATIONS TO CONTRACT

Any alterations, variations, modifications, or waivers of the provisions of the Contract will be valid only if they are reduced to writing, duly signed by the parties and attached to the original Contract.

9

### 3.2 FORCE MAJEURE

Neither party shall be liable in damages or have the right to terminate this Agreement for any delay or default in performing hereunder if such delay or default is caused by conditions beyond its control including, but not limited to Acts of God, Government restrictions (including the denial or cancellation of any export or other necessary license), wars, insurrections and/or any other cause beyond the reasonable control of the party whose performance is affected.

### 3.3 TERMINATION OF CONTRACT

A.    Termination-for Cause

    1.    If either party fails to fulfill its obligations under the Contract in a timely proper manner, or if either party violates any material covenant, agreement, or stipulation of the Contract, the aggrieved party shall thereupon have the right to terminate the Contract by giving written notice of termination to the other party, which such notice shall be given not less than 60 calendar days prior to the stated effective date of termination The notice shall specify the effective date of the termination, and the reasons therefore, unless the party to whom notice is given cures the breach to the satisfaction of the party giving notice prior to the effective date of termination.

    2.    Notwithstanding the above, the Contractor shall not be relieved of liability to the Agency for damages sustained by the Agency by virtue of any breach of the Contract by the Contractor and the Agency may withhold any payments to the Contractor, in an amount reasonably calculated to equal the estimated damages, for the purpose of setoff until such time as the exact amount of damages to the Agency from the Contractor is determined.

B.    Termination for Convenience of the Agency

The Agency may terminate the Contract at any time by giving written notice to the Contractor of termination, which such notice shall be given not less than 120 calendar days prior to the stated effective date of termination.

C.    Payment due to Termination

Upon termination of this Contract for any reason, prior to the end of the then existing term, the Contractor will be paid up to the effective termination date such sums and expenses, prorated as necessary, in accordance with those monthly fees

described in paragraph 2.1 and subject to the maximum liability provisions described Section 1.8.

**D.**    **Records and Documentation Remain the Property of the Agency**

All medical records, Agency policies and procedures, Agency manuals, instructional books, orientation, and continuing education records shall be the property of the Agency and, at the termination of the Contract, remain the property of the Agency without further obligation.

# IV.    CONTRACT TERM

The term of the Contract will be for one (1) year, commencing on July 1, 2015 and will continue for an additional (12) month period from July 1, 2015 to June 30, 2016. This Contract will be eligible for renewal for indefinite consecutive one (1) year terms upon the mutual agreement of the Agency and Contractor. Changes to the Contract, including the term and reimbursements for services, will be discussed and agreed upon by both parties prior to the beginning of each extended Contract year.

# V.    MISC.

## 5.1 INDEPENDENT CONTRACTOR STATUS

It is mutually understood and agreed, and it is the intent of the parties hereto that an independent contractor relationship be and is hereby established under the terms and conditions of this Contract. Nothing in this Contract shall be construed to create an agency relationship, an employer/employee relationship, a joint venture relationship, or any other relationship allowing the Agency to exercise control or direction over the manner or methods by which Contractor, its employees, agents or subcontractors perform hereunder, or Contractor to exercise control or direction over the manner or methods by which the Agency and its employees, agents or subcontractors perform hereunder, other than as provided in this Contract.

## 5.2 SUBCONTRACTING

In order to discharge its obligation hereunder, Contractor may engage certain physicians as independent contractors rather than employees ("Contract Professionals"). Contractor shall not engage any Contract Professionals that do not meet the applicable professional licensing requirements and Contractor shall exercise administrative supervision over such Contract Professionals as necessary to insure the strict fulfillment of the obligations contained in this Contract.    Services provided by Contract Professionals under this Contract shall be provided in a manner reasonably consistent with the independent medical judgment the Contract Professionals are required to exercise.

## 5.3 AGENCY STATUTORY DELEGATION

11

For purposes of asserting any statutory rights afforded to the Agency or the Facility to pay providers for medical services at certain reduced rates, Agency designates Contractor as its agent to assert such rights and privileges.

## 5.4 EQUAL EMPLOYMENT OPPORTUNITY

Contractor will not discriminate against any employee or applicant for employment because of race, color, religion, sex, ancestry, national origin, place of birth, marital status, sexual orientation, age or handicap unrelated to a bona fide occupational qualification of the position or because of status as a disabled veteran or Vietnam-Era veteran.  Contractor will distribute copies of its commitment not to discriminate to all persons who participate in recruitment, screening, referral and selection of job applicants, and to prospective job applicants.

## 5.5 WAIVER OF BREACH

The waiver of either party of a breach or violation of any provision of this Contract shall not operate as, or be construed to be, a waiver of any subsequent breach of the same or other provision hereof.

## 5.6 ASSIGNMENT

No party of this Contract may assign or transfer this Contract, or any part thereof, without the written consent of the other party.

## 5.7 NOTICES

Any notice of termination, requests, demands or other communications under this Contract shall be in writing and shall be deemed delivered: (a) when delivered in person to a representative the parties listed below: (b) 3 days after mailing when mailed by first-class certified mail, return receipt requested, addressed to the party at the address below; or (c) upon confirmation of receipt if sent by electronic means or facsimile to the parties listed below:

If for Turn Key:
Turn Key Health Clinics, LLC
Attn: Flint Junod, COO
9925 South Penn Avenue, Suite 110
Oklahoma City, OK 73159

Telephone: (405) 516-0276

If for Canadian County Sheriff's Office:
Canadian County Sheriff's Office
Attn: Randall Edwards, Sheriff

208 West Rogers
El Reno, OK 73036

Telephone: (405) 422-3187

Such address or phone number may be changed from time to time by either party by
providing written notice as provided above.

### 6.8 GOVERNING LAW

This Contract shall be governed by and construed in accordance with the laws of the
State of Oklahoma without regard to the conflicts of laws or rules of any jurisdiction.

### 6.9 COUNTERPARTS

This Contract may be executed in several counterparts, each of which shall be considered
an original and all of which shall constitute but one and the same instrument.

### 6.10 TITLE OF PARAGRAPHS

Titles of paragraphs are inserted solely for convenience of reference and shall not be
deemed to limit, expand or otherwise affect the provisions to which they relate.

### 6.11 SEVERABILITY

In the event that any one or more provisions of this Contract shall, for any reason, be held
to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or
unenforceability shall not affect any other provision of this Contract and this Contract
shall be construed and enforced as if such invalid, illegal or unenforceable provision had
never been contained herein.

**\*\*\*THE REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK\*\*\***

## 6.12 ENTIRE CONTRACT

This Contract constitutes the entire agreement of the parties and is intended as a complete and exclusive statement of the promises, representations, negotiations, discussions and agreements that have been made in connection with the subject matter hereof.  This Contract may be amended at any time, but only with the written consent of all parties.

IN WITNESS WHEREOF, the parties have caused this Contract to be executed as their official action by their respective representative, each of whom is duly authorized to execute the same.

**AGREED TO AND ACCEPTED AS STATED ABOVE:**

**TURN KEY HEALTH CLINICS, LLC.**

Dated: 6/17, 2015     By: _____

Flint Junod
Chief Operating Officer

**CANADIAN COUNTY SHERIFF'S OFFICE**

Dated: 6/18, 2015     By: _____

Randall Edwards, Sheriff

**BOARD OF COUNTY COMMISSIONERS OF CANADIAN COUNTY**

Dated: June 22, 2015     By: _____

Marc Hader, Commissioner

Dated: _____, 2015     By: _____

Dave Anderson, Commissioner

Dated: June 22, 2015     By: _____

Jack Stewart, Commissioner

PH
6-17-15

**ATTEST:**

Shelley Dickerson, County Clerk

14